UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BRADLEY A. RIDDLE,

 Plaintiff

 v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

 Defendant

Case No. 2:16-cv-02003-JAD-BNW

**Order Granting Motion to Remand, Denying Cross-Motion to Affirm, and Remanding Case**

[ECF Nos. 16, 17]

 This is Plaintiff Bradley A. Riddle's action for judicial review of the Commissioner of Social Security's denial of his application for supplemental security income under Title XVI of the Social Security Act. Because I find that the ALJ erred in two respects, and those errors were not harmless, I grant plaintiff's motion for reversal or remand,[1] deny the Commissioner's cross-motion to affirm,[2] and remand this case for further proceedings.

## BACKGROUND

 On March 12, 2012, plaintiff applied for supplemental security income under Title XVI of the Act, alleging an onset date of July 2, 2006.[3] Plaintiff's claim was denied initially and on reconsideration.[4] An Administrative Law Judge (ALJ) conducted a hearing on January 14, 2015.[5] On February 4, 2015, the ALJ issued a decision finding that plaintiff is not disabled.[6] The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on

---

[1] ECF No. 16.

[2] ECF Nos. 17 and 18.

[3] AR 49–52, 137–145. AR refers to the Administrative Record in this matter. *See* Notice of Manual Filing, ECF No. 11.

[4] AR 64–67, 71–74.

[5] AR 32–48.

[6] AR 13–30.

June 23, 2016.[7] A month later, plaintiff commenced this action for judicial review under 42 U.S.C. §§ 405(g).[8]

## DISCUSSION

**I.  Standards of Review**

    **A.  The underlying disability-evaluation process**

An individual seeking disability benefits has the initial burden of proving disability.[9] To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months"[10] by providing "specific medical evidence" in support of his claim for disability.[11] If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy.[12]

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.[13] If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required.[14] Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity (SGA).[15] SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit.[16] If the individual is engaged in

---

[7] AR 1–6.

[8] *See* IFP App., ECF No. 1.

[9] *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).

[10] 42 U.S.C. § 423(d)(1)(A).

[11] 20 C.F.R. § 404.1514.

[12] *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

[13] *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[14] *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

[15] 20 C.F.R. § 404.1520(b).

[16] *Id.* § 404.1572(a)-(b).

SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities.[17] An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.[18] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[19] If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement,[20] then a finding of disabled is made.[21] If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations

---

[17] *Id.* § 404.1520(c).

[18] *Id.* § 404.1521; *see also* Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p. The SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

[19] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

[20] 20 C.F.R. § 404.1509

[21] 20 C.F.R. § 404.1520(h).

from impairments.[22] In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.[23] To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work (PRW).[24] PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to have learned the job and performed an SGA.[25] If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work, considering his RFC, age, education, and work experience.[26] If he can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.[27]

---

[22] *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.

[23] 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p.

[24] 20 C.F.R. § 404.1520(f).

[25] 20 C.F.R. §§ 404.1560(b) & 404.1565.

[26] 20 C.F.R. § 404.1520(g).

[27] *Yuckert*, 482 U.S. at 141–42.

## B. Summary of the ALJ's five-step analysis of Riddle's claim

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920.[28] At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of March 12, 2012.[29] At step two, the ALJ found that he had a medically determinable "severe" impairment of degenerative disc disease of the cervical and lumbar spine.[30] At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[31] At step four, the ALJ found that he has the RFC to perform medium work as defined in 20 C.F.R. §§ 416.967(c).[32] The ALJ found that plaintiff has no PRW.[33] The ALJ noted that plaintiff was born on November 4, 1968, and was 43 years old, which is defined as a younger individual age 18–49, on the alleged disability-onset date.[34] The ALJ further stated that the plaintiff has at least a high-school education and is able to communicate in English.[35] Moreover, the ALJ found transferability of job skills is not an issue because plaintiff does not have PRW.[36] Considering the claimant's age, education, work experience, and the residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that the claimant can perform.[37] So, the ALJ concluded that the plaintiff was not under a disability at any time from March 12, 2012, through the date of the February 4, 2015, decision.[38]

---

[28] AR 16–23.
[29] AR 18.
[30] *Id.*
[31] AR 18.
[32] *Id.*
[33] AR 23.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] AR 24.

**C.     General standards for judicial review of a Commissioner's decision**

Administrative decisions in social-security disability-benefits cases are reviewed under 42 U.S.C. § 405(g),[39] which reads: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[40] The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner *de novo*.[41]

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[42] But those findings may be set aside if they are based on legal error or not supported by substantial evidence.[43] The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44] In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."[45]

---

[39] *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

[40] *Id.*

[41] *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

[42] *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).

[43] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

[44] *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

[45] *Reddick*, 157 F.3d at 720; *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial-evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.[46] When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.[47] Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court need not speculate about the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based."[48] Mere cursory findings of fact without explicit statements about what portions of the evidence were accepted or rejected are not sufficient.[49]

## II. Analysis

### A. The ALJ's discounting of Dr. Larson's opinion

Plaintiff first argues that the ALJ improperly evaluated the opinion of examining physician Dr. Larson by not providing specific and legitimate reasons for rejecting her opinion. Dr. Larson, who conducted a consultative psychological evaluation of plaintiff on June 13, 2013, opined that he had developed depression and frustration secondary to physical symptoms.[50] She diagnosed him with a mood disorder due to a general medical condition with depressive features and a pain disorder associated with both psychological factors and a general medical condition.[51] The ALJ gave little weight to Dr. Larson's opinion because, as the ALJ explained, it was primarily dependent on the plaintiff's physical concerns, his self-reports, and a one-time

---

[46] *Batson*, 359 F.3d at 1193.

[47] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

[48] *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

[49] *Id.*

[50] AR 289.

[51] *Id.*

evaluation.[52] The Commissioner responds that the ALJ properly evaluated and discounted Dr. Larson's opinions.

The ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration.[53] But the ALJ is not required to provide a robust discussion of every piece of evidence.[54] The ALJ must consider all the relevant evidence in the record and may not point to only those portions of the record that bolster his findings.[55] And to reject an examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record."[56]

A doctor's clinical interview and Mental Status Examination (MSE) are objective measures,[57] so an ALJ cannot discount a doctor's clinical interview and MSE as self-reports (i.e., subjective medical evidence).[58] An ALJ also may not discredit a medical opinion solely because the provider examined the claimant only once.[59] Finally, an error is harmless if it is "inconsequential to the ultimate nondisability determination."[60] An error is not harmless unless

---

[52] AR 18.

[53] 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

[54] *See, e.g., Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence'" (citations omitted)).

[55] *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207–08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

[56] *Regennitter v. Comm'r. of Soc. Sec. Admin.,* 166 F.3d 1294, 1298–99 (9th Cir. 1999) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996)).

[57] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

[58] *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding that the ALJ erred by discounting a medical opinion on the grounds that it was too heavily based on plaintiff's self-reports when the opinion discussed the provider's observations, diagnoses, and prescriptions in addition to self-reports).

[59] *See* 20 C.F.R. § 416.927(c).

[60] *Stout*, 454 F.3d at 1055.

the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination."[61]

Here, the ALJ erred by improperly discounting Dr. Larson's opinion for relying on subjective complaints. The ALJ failed to recognize that Dr. Larson did in fact rely on both objective medical evidence (i.e., clinical interview, Mental Status Examination) and subjective complaints. The ALJ also erred by discounting Dr. Larson's opinion for only examining Plaintiff once given that a one-time evaluation is not a legally sufficient reason for discounting a physician's opinion. These legal errors are not harmless because if Dr. Larson's opinion was fully credited, an ALJ "could have reached a different disability determination."[62]

The ALJ evaluated and discounted Dr. Larson's opinion because of its subjective nature and found that the plaintiff was not restricted by any mental health limitations.[63] According to the ALJ, Dr. Larson's reliance on subjective complaints indicated that there was a lack of objective medical evidence to find a medically determinable mental impairment.[64] However, Dr. Larson did not exclusively rely on the plaintiff's subjective complaints. She also performed a clinical interview and an MSE[65] to diagnose plaintiff with (1) a pain disorder associated with both psychological factors and a general medical condition chronic and, (2) a mood disorder due to a general medical condition with depressive features.[66] Dr. Larson also opined that chronic-pain and narcotic-pain medication would diminish plaintiff's concentration, persistence, and pace.[67] She further concluded that he had a Global Assessment of Functioning (GAF) of 49, which

---

[61] *Id.* at 1056.

[62] *Id.*

[63] AR 18.

[64] *Id.*

[65] AR 285–89.

[66] AR 289.

[67] AR 288–89.

indicates severe symptoms.[68] In light of all this objective evidence, the ALJ erred by discounting Dr. Larson's clinical interview and MSE as founded on merely subjective complaints.

Nor did the ALJ properly discount Dr. Larson's opinion because she evaluated plaintiff only once.[69] The fact Dr. Larson evaluated plaintiff one time is not a legally sufficient basis to reject her opinion.[70] This just-once reasoning is also inconsistent with the ALJ's decision to assign "great weight" to the opinions of examining orthopedic surgeon Dr. Jerrold Sherman who, like Dr. Larson, only examined plaintiff just one time.[71]

The Commissioner argues the ALJ properly discounted Dr. Larson's opinion because, in part, Dr. Larson's opinion "was not consistent with Plaintiff's own allegations at the consultative examination [with Dr. Larson]." The Commissioner cites to page 18 of the administrative record but does not quote the ALJ. The court was unable to identify this ALJ comment in the decision. The Commissioner additionally argues that the ALJ properly discounted Dr. Larson's opinion because plaintiff's testimony at the hearing was inconsistent with her findings: the plaintiff was able at the hearing "to focus and pay attention" and "concentrate well enough to answer [the ALJ's] questions in detail . . . ."[72]

A physician's opinion may be rejected if it is based on a claimant's subjective complaints that were properly discounted.[73] However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis to reject the opinion.[74] A clinical interview and MSE are objective measures and cannot be discounted as "self-report[s]."[75] Here, the ALJ made a specific finding that the medical source, Dr. Larson,

---

[68] AR 289.

[69] AR 18.

[70] *See* 20 C.F.R. § 416.927(c).

[71] AR 21.

[72] AR 22.

[73] *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

[74] *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199–1200.

[75] *See Buck*, 869 F.3d at 1049.

1  relied on plaintiff's self-reports, but the record reflects that Dr. Larson also relied on objective
2  medical evidence in conducting both a clinical interview and MSE. So, although the ALJ
3  provided specific reasons for discounting Dr. Larson's opinion, those reasons either did not
4  account for the fact that Dr. Larson also relied on objective medical evidence or are a legally
5  insufficient reason to discount a physician's opinion. I thus find that the ALJ did not provide
6  specific and legitimate reasons supported by substantial evidence in discounting Dr. Larson's
7  opinion. This legal error is not harmless because, if Dr. Larson's opinion were fully credited, an
8  ALJ "could have reached a different disability determination."[76]

### b. Severity of plaintiff's headaches

Plaintiff next argues that the ALJ improperly rejected his migraines[77] as non-severe. The ALJ found there was no objective medical evidence to support restrictions of any kind stemming from the plaintiff's headaches. The ALJ also found the claimant's headaches were non-severe because they did not affect his ability to perform basic work activities more than minimally. Plaintiff argues that this finding is not supported by substantial evidence and that the ALJ should evaluate the impact of his headaches on his RFC. The Commissioner responds that the ALJ properly evaluated the plaintiff's headaches because there was no objective evidence to support work-related functional limitations and because the ALJ was not required to consider a brain MRI that the plaintiff underwent.

Step two of the five-step evaluation process establishes a *de minimis* threshold for determining whether a medically determinable impairment or combination of impairments is severe.[78] An ALJ may find a medically determinable impairment or combination of impairments non-severe "'*only if* the evidence establishes a slight abnormality that has no more than a minimal

---

[76] *Stout*, 454 F.3d at 1056.

[77] Plaintiff uses the term "migraines" whereas the ALJ and the Commissioner use the term "headaches[.]" Medical records in the administrative record use the terms "migraine[,]" AR 220, "cervicogenic migraines[,]" AR 223, "headaches (Cervicogenic)," AR 224, "headaches," AR 291, and "migraine control," AR 293. The court uses the term the ALJ uses in his decision.

[78] *Smolen*, 80 F.3d at 1290.

effect on an individual's [physical or mental] ability to work.'"[79]  Basic work activities include physical functions like walking, standing, and carrying as well as the capacity to see, hear, speak, understand, remember simple instructions, respond appropriately to work situations, and deal with changes in a routine work setting.[80]

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.[81] But objective medical evidence is a relevant factor—along with the medical source's information about the claimant's pain or other symptoms—in determining the severity of a claimant's symptoms and their disabling effects.[82]  And when concluding a claimant's impairment or combination of impairments is not severe, the ALJ must demonstrate his conclusion is "clearly established by medical evidence."[83]  Where there are discrepancies or ambiguities in the record, the ALJ is responsible for resolving both conflicts in medical testimony and ambiguities.[84] Finally, if there is any error in the ALJ's finding at step two, it is harmless if all impairments, both severe and non-severe, are considered when determining the plaintiff's RFC.[85]  Otherwise, an RFC that fails to take into account plaintiff's limitations is defective.[86]

Here, at step two of the analysis, the ALJ found the plaintiff's headaches non-severe because of their minimal impact on his ability to perform basic work activities[87] and due to a lack

---

[79] *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290) (emphasis added)).

[80] 20 C.F.R. § 416.921(b); *Tagger v. Astrue*, 536 F.Supp.2d 1170, 1179 (9th Cir. 2008).

[81] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346–47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

[82] *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

[83] S.S.R. 85-28.

[84] *Reddick*, 157 F.3d at 723 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

[85] *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

[86] *Samples v. Commissioner of Social Sec. Admin.*, 466 Fed. Appx. 584, 586 (9th Cir. 2012).

[87] AR 18.

of objective medical evidence to support restrictions of any kind.[88] The ALJ later discusses a negative brain CT that the plaintiff underwent that was noted in a report completed by Dr. Keith S. Blum, D.O., who recommended that the plaintiff undergo updated cervical-spine and lumbar-spine MRIs; the ALJ does not, however, discuss headaches within the scope of the negative brain CT.[89]

As early as January 30, 2007, Dr. Russell J. Shah, a neurologist and plaintiff's treating physician for approximately three years, diagnosed him with cervicogenic migraines, a concussion unspecified, a closed-head injury, and post-concussive syndrome.[90] On June 18, 2007, Dr. Shah opined that the plaintiff suffered from migraines and head-pain syndrome, mood disorder secondary to chronic head and neck etiology.[91] Dr. Shah recommended various pain medication for the migraines, the use of a headache calendar, the use of Werner Balance physical therapy to help alleviate dizziness, and a referral to a migraine clinic.[92] On May 6, 2008, Dr. Yoon-Hee Cha evaluated plaintiff at UCLA Medical Center and noted a two-year history of cognitive dysfunction and headaches.[93] Dr. Cha prescribed pain medications for the migraines and a psychological evaluation for adjustment disorder leading to depression and anxiety.[94] On July 1, 2009, Dr. Marjorie Belsky diagnosed plaintiff with post-concussive syndrome with central pain components.[95] Two months later, Dr. Shah found that plaintiff had to wear sunglasses due to light sensitivity and that he suffered from a traumatic brain injury with axonal shearing.[96]

---

[88] *Id.*

[89] AR 21.

[90] AR 217.

[91] AR 232.

[92] AR 224, 232.

[93] AR 291.

[94] AR 293.

[95] AR 295.

[96] AR 248–49.

| | |
|---|---|
| 1 | Examining and treating physicians continued to diagnose plaintiff with migraines, photophobia, insomnia, and memory loss from 2011 through 2014.[97] Plaintiff complained of headaches and difficulty tolerating lights and sounds to examining physician Dr. Larson during her psychological evaluation on June 13, 2013. In this same consultation, Dr. Larson opined that plaintiff's "ability to tolerate work setting stressors would be fully dependent upon his physical concerns."[98] Further, a brain MRI performed on December 15, 2013, at University Medical Center of Southern Nevada indicated "small chronic microhemorrhages with the right postcentral gyrus and left parietal robe."[99] These clinical records and imaging studies reveal objective evidence of a severe medical impairment. But plaintiff completed brain CTs on July 2, 2006, and on February 17, 2014, at University Medical Center of Southern Nevada and Mountain View Hospital, respectively, with normal findings.[100] |

This medical evidence in the record reveals conflicting conclusions about the headaches. When there is conflicting evidence in the medical record, the ALJ is required to acknowledge and resolve these conflicts. A resolution, however, is not the equivalent of finding there is no objective medical evidence available to support a severe impairment, which is what the ALJ did here. Because the ALJ did not resolve the conflicts in the medical evidence,[101] I find that the ALJ erred by not providing clear and convincing reasons to identify plaintiff's headaches as non-severe and by not resolving this conflicting evidence in the medical record. This error at step two is not harmless because the ALJ did not consider all impairments, severe and non-severe, in the determination of plaintiff's RFC.

---

[97] AR 265, 271, 305, 334.

[98] AR 289.

[99] AR 391.

[100] AR 392, 398.

[101] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence").

**CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff's motion to remand **[ECF No. 16] is GRANTED** and the Commissioner's cross-motion to affirm **[ECF No. 17, 18] is DENIED.** This case is remand for further proceedings consistent with this opinion. The Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.

Dated: September 23, 2019

_____
U.S. District Judge Jennifer A. Dorsey